Good morning, Your Honors. May it please the Court, Kyle Lewis, Office of the Attorney General, on behalf of defendants and appellants. I request five minutes to be set aside for rebuttal, and I'll keep my own time. Mental health clinicians across this country provide psychiatric services to patients via telepsychiatry, which uses remote, video-based technology, allowing participants to visualize each other and interact during an appointment. Telepsychiatry is used by large and diverse mental health programs, including the Department of Veterans Affairs, the Federal Bureau of Prisons, and the Texas Department of Corrections. Here, the California Department of Corrections and Rehabilitation has used telepsychiatry to treat its inmate patients for nearly two decades, with no evidence that it caused harm to its patients. But in its July 3, 2018, order, the district court placed restrictions on CDCR's use of telepsychiatry at certain levels of care within a department's mental health care program, without engaging in the analysis required by the Prison Litigation Reform Act. What part of the 2018 order are you appealing? We are appealing only that portion of the order that concerns the limitations placed on the use of telepsychiatry at certain levels of care. Okay. Which and what part of that order? That order defines telepsychiatry as, breaks it down into three areas. You can give me a page, if you wish, and a line number as to what part of the district court's order you're disagreeing with. And I'm concerned to your counsel with our jurisdiction. Yes, Your Honor. The entire order is not being appealed. It is only going to be, and I apologize for this, I will find the exact citations for it. We are looking at ER, I'm going to find my citation, Your Honor, I apologize. It's four to about, well, the conclusion begins on page eight. Yes, Your Honor. The additional matters is Roman IV is on seven, so four to seven is the telepsychiatry. So which, what part of this order are you appealing? I'll step over here and get the order. Sure. So you're on ER-5? ER-4 is where the telepsychiatry starts. Correct, Your Honor. And if you look at ER-5, the next page, specifically EOP, section B, line 18, you'll see that says that telepsychiatry may supplement on-site psychiatry at the EOP level, but it should not replace on-site psychiatry. Wasn't that in the prior order? Your Honor, it was in the sense that this was something that the district court in its 2017 order began talking about and began a process. Began processing? Began a process, I'm sorry, Your Honor. You had an injunction. I mean, you're not going to tell me that the October 2017 wasn't an injunction, are you? Your Honor, at the very least, this October 2018 order is a separate injunction. Okay. Show me the language of injunction here. What was it you were ordered to do that was different from October 2017? Yes, Your Honor. And it wasn't simply a clarification of something you had previously been ordered to do? In the October 2017 order, the district court had mentioned that it gave some provisos and also set forth a process in which the parties would talk about the telepsychiatry policy. In the October 2018 order, and in fact in the 2017 order, and I apologize, it's tough to go back and forth between the two, the order says that telepsychiatry should only be used in certain circumstances. Right. In 2018, after the parties went through a long process to include five work groups and other items like that, that they produce different materials, the defendants revise their policy, the district court said that telepsychiatry shall only be used in certain ways. It is that clarification, that certainty, that crystallization. Where's the certainty in the order? Give me the page and the line. Okay, Your Honor. As to MHCB on page six at line seven. May not be used? May not be used. Okay. Whereas before, it was should. So it's the certainty that came after months of negotiations. Are you only appealing then the MHCB? No, Your Honor. We're also appealing the EOP provisions. I'm sorry. Okay. Well, show me the EOP provision that is new, that modifies the prior or amends the prior injunction. Yes, Your Honor. That first line says may supplement, but it should not replace. If the should was ambiguous in the prior order, it surely is ambiguous here. Your Honor, the ambiguity, though, is that the court even recognized this in its hearings that it had before it issued this order. It recognized in its June 2018 order that there was a disconnect when it saw what the parties were, the negotiations the parties were going through. So the 2017 order started a process to include a series of work groups and further hearings before the court that turned into the court realizing there was a disconnect that turned into the 2018 order. Now the 2018 order gave that crystallization and gave that clarity that this was a point at which the defendants were appealing a certain aspect of what they could or could not use telepsychiatry for. So with that, at the very least, this is a new injunction, that this says you shall do this. It also, towards the back of the order, when it talks about finalization of policy on page six, it specifically directs the special master to take over the finalization of the policy. In doing so, it removes that authority and that state's ability to use it. Well, it's directing the special master to finalize a policy. Yes, and that is new. That is a completely new aspect of this order compared to the 2017 order. But how does that affect these other provisions you're talking about? Well, Your Honor, the state needs to use telepsychiatry in the way it can, in the best way and broadest way that it can for its patients. Clinicians need to have the options and the abilities to use all modes of care. But the special master, has the special master finalized anything at this point? No, Your Honor. Actually, it has not been finalized because the district court, after seeing that the there are hearings on this. But those hearings are indefinitely being put on hold. So the special master provision is particularly important because it removes the ability of the state to formulate its own policy. So is this under review? Is it taking this whole order under reconsideration? No, Your Honor. That is not that the . . . What's the additional hearings that it's going to hold? The hearings are going to be so the defendants can demonstrate the efficacy of telepsychiatry. Those were scheduled to be held sometime in late 2018. But by a September 2018 order, the court has essentially vacated those and has decided they won't be going forward. Because of the appeal here? No, Your Honor. Due to other actions in the case. The case has been, obviously, quite busy. It's quite a large case. But the district court, in theory, wouldn't have jurisdiction to do that given this appeal. The court has noted that in some of its other hearings. But still, this order, this September 2018 order, specifically the provision transferring the ability to finalize that policy to the special master still stands. And then defendants are still being directed to use telepsychiatry in a certain way for certain levels of care. I'm not sure that I fully understand what relief you want here. You want relief to allow telepsychiatry below the EOP level of care? Your Honor, actually below the EOP level of care, it's fine. It's actually been permitted for the triple CMS, the largest portion. But what defendants would like is that this court vacate this order as to the provisions regarding telepsychiatry from page 4 on. And remand to the district court for proceedings that the court has already envisioned that it would be having. So, under, on page 6, lines 4 and 5, the court says any telepsychiatrist assigned to an EOP unit must visit that unit at least four times a year. That was in the prior order, wasn't it? It was suggested in the prior order because that was part of the special master's recommendations. So, it is. And in the prior order, the recommendations of the special master were adopted. Yes. The court did adopt them. There were clarifications on it. It said that it should not supplant, it could only supplement. So there are confusing terms throughout the orders, both orders. But most particularly the October, the July 2018 order, where it is undefined exactly what supplement means or what in emergent situations means as to the use of these, this modality of care. By the way, telepsychiatry is just a way of providing care. It's not an actual separate type. It's a medical tool. It's not a separate type of care. Well, the court approves it for certain types of care, right? Yes, Your Honor. It does approve it for a certain classification of inmate. But the EOP population, which is an intermediate care population, it is basically an enhanced day program population. There's about 6,000 to 7,000 of them within CDCR's population. Mental health clinicians should be able to use telepsychiatry. It was just a way of getting that mental health care to the people who need it the most. And that's what the state would like to be able to have the freedom and the freedom of action to do without having the restrictions that are in this order, which are not tethered to the requirements of the Prison Litigation Reform Act in terms of the court put this injunction in place without following the statutory framework that Congress has laid down in the PLRA. So the issue here then is whether or not the state has the authority or has the ability to draft its own policies. Okay. Counsel, I'm still trying to figure out what precisely you are. I know that this was, I know you had, you leveled a broadside on this one, but I'm trying to figure out the difference between this order and the last one, the one that you didn't appeal and this one, because I'm trying to figure out what it is that you can appeal here. Yes, Your Honor. So was there something in the prior order about a telepsychiatrist visiting a unit at least four times a year? There's a citation that follows that to a prior filing. Yes, Your Honor. That was a recommendation that was within the prior order. It became crystallized and finalized in the subsequent order. Okay. So you're going to, you're going to, you wish to appeal that one? Yes, Your Honor. Okay. And you wish to appeal the one under the MHCB? Yes. And as to EOP, Your Honor, it's the limitation that it should only supplement on-site telepsychiatry. That is the thing that is most concerning to the defendants, is that the court with this order has said that telepsychiatry can only be used to supplement on-site psychiatry at the EOP level. Right. But that's not tied to anything within the Eighth Amendment or any kind of violation and does not follow the requirements of the Prison Litigation Reform Act by instituting that injunction. Here you simply have a population of inmates that require services and CDCR is trying to get those services to the inmate population, to its patients, via a method of getting it to them, basically, a modality of care. It's not that this is a separate type of care. This is simply using a psychiatrist via telemedicine. But why didn't you appeal the prior order? The prior order, Your Honor, if you look at it, has obviously the should language, but it also has a set of situations where the court was envisioning that the parties would go further and discuss things going further. There's quite a bit of language that is mandatory in there. I went back and circled it all this morning. And, Your Honor, there is stuff, there is direct language in there, but there also, the court envisions that this would be something that would be monitored and subject to change. So when the court orders the parties to go to working groups and discuss this, like the parties did five times, defendants came back with three different revisions to the policy, it demonstrates that the court was envisioning that this was an ongoing process, and that's what defendants interpreted. So as they went back, in fact, in the February 2018 hearing, the court specifically asked, how can telepsychiatry be used in conjunction with the Eighth Amendment? So the court itself was indicating in February 2018, after the October 2017 order, that there were still things happening, that it was still developing, and that this was something that the parties were negotiating and trying to move forward with. It wasn't until, in fact, there were, in the June 2018 hearing, defendants specifically noted that things like the Department of Corrections in Texas were using telepsychiatry writ large. But then after that, the court issued its July 2018 order, where it said it recognized disconnect, and came in and said, no, this is how it shall be, in terms of telepsychiatry shall only be used to supplement on-site psychiatry, and that they put the further limitations at the MHCB, the highest levels. Here, once again, no tie to the Prison Litigation Reform Act, which requires when an injunction like that is in place, you have to demonstrate. So is there nothing in the prior order about MHCB? No, Your Honor. There is stuff in the prior order about MHCB. Okay. And where is that?  Yes. Let me get that, Your Honor. Telepsychiatry begins at page ER 162, and then if you look at 163, it says that telepsychiatry is not appropriate for the MHC level of care, except as a last resort or in emergency situations when an on-site psychiatrist is not available. That's a recommendation that the Court notes. It's later in the order. I'm sorry, which lines are you looking at? If you look at page 163 at line 22, and then if you look at page 165 at line 9, the Court says the clarification is the first recommendation confirming that telepsychiatry should serve as a supplement rather than substitute for on-site psychiatry, and should only be used when institutions are unable to recruit psychiatrists. And the recommendations are adopted. That's lines 8 and 9. It adopts them, Your Honor, yes, but... Recommendations that line 15 shall form the basis of the addendum to the revised program guide, addendum to the revised program guide shall be developed and finalized. That's 17 and 18. The task shall be completed within one year. That's 19 and 20. And that right there, Your Honor, indicates that the Court was seeing that this was going to be an evolving process as it moved forward. Once again, telepsychiatry is a constantly changing world. This order right here that we're appealing now is a year and a half old, and this is technology that is constantly moving. Telepsychiatry is the now. It is the progress. It's going forward. Defendants would like to have the ability to use it as they see fit. But here, the Court put these restrictions on telepsychiatry in its 2018 order, saying that it only shall supplement without any findings. Can you explain, assuming we would agree with you, why is that problematic? Because it doesn't seem on reading it, shall supplement is pretty vague. And so if you were to have one psychiatrist on site, but 90% of the work was done through telepsychiatry, would that violate the order? It would supplement it? It would be violating... Well, it would violate the order, Your Honor. But more importantly... Why would it violate the order? It would be supplementing it. Well, Your Honor, our position actually is that the order saying supplement is improper because it doesn't comply with the PLRA's requirements that you can only put an injunction in place if you demonstrate the needs, narrowness, intrusiveness argument regarding the need for that. In this particular instance, there's been no evidence whatsoever that telepsychiatry, simply injecting it creates an unconstitutional condition. It's not constitutionally infirm, it's just, it is a way of getting care out there. So all of a sudden at the EOP level, say it's fine to use it at EOP, or I'm sorry, at the lowest level. But the district court isn't denying you the opportunity to use it. That's what's confusing to me. But it is placing restrictions on it. But if we were to get into it, the restrictions would be relevant to that. And here, I don't know, wouldn't we interpret the order presumably to be constitutional and therefore say the supplemental language gives you a lot of leeway? Well, Your Honor, in order for the order to be appropriate, it has to follow through the PLRA's requirements of it can only be in place. You're just saying there's absolutely no restriction. Even if this were a 5% burden, the district court can't do it. There should be no restrictions unless the district court makes those appropriate findings. And one of the reasons why is if you examine the record, the record is replete with examples where the special master actually went out and assessed its population, assessed the inmate population, and found that even at the EOP and even at the MHCB level, telepsychiatry was being used and had positive results. It was clinically appropriate. So there are examples, and then all of a sudden, that was in May of 2016, the special master said that. Then in February of 2017, the special master all of a sudden said, okay, wait a minute, it should only be used to supplement, but there's no justification, there's no examination for why that's done. The district court picked up on that, and then in its July 2018 order came down with a final, no, you shall do this, but still, nothing tied to the requirements of the PLRA for such an injunction, which is necessary and mandated by Congress. Was there expert testimony in the record about the value of the telepsychiatry that's used all of a sudden? Yes, Your Honor. The chief psychiatrist for CDCR testified regarding the efficacy of it and its use. And there's also demonstrations of it. I would encourage the court to look at page ER180 so you can actually see what telepsychiatry looks like. Was there contrary testimony that it's not very good or? Actually, no, there wasn't, Your Honor. There was very broad statements by the special master that it's simply not appropriate for a population, whereas their actual examination in the field, I would encourage the court to look at page 613, page 614, page 619 of the record to see actual inmates that telepsychiatry was used on and they had positive benefits. Is California trying to say we're not going to provide a psychiatry on site at all? No. Actually, Your Honor, the department has said that it's preferred preferences in person, especially at the MHC. So I guess that's why I don't understand how this is harming California. I just don't read the injunction to be as prohibitive as you apparently do. By not allowing clinicians to exercise their clinical judgment if they decide that I should be able to use it. But I don't see how this takes away your ability to use clinical judgment. Well, because if it says it can only supplement if there is no person on site, if there can't be a person on site due to vacations or things like that, then you've got that limitation where a clinician cannot exercise his or her clinical judgment to use telepsychiatry to treat their patients. In closing, Your Honor, I would note that with this particular situation, everyone, including the special master, the plaintiff, and defendants, want to get the best care possible for our inmate population. CDCR recognizes this obligation. It feels it needs to have the freedom to do that, and the telepsychiatry policy is currently drafted or currently proposed in this order. And the limitations placed on it do not allow CDCR to have the flexibility to use telepsychiatry for its population as it sees fit and really interferes with clinicians' judgment. Thank you. Thank you, Mr. Lewis. The House? Good morning. May it please the Court, this is Lisa Ells. I represent the plaintiffs in the Coleman case. As this Court understands already, it's apparent from the initial argument, this appeal is both too early and too late. It is too early because there is a process that the district court has set up to resolve all of these factual disputes with live testimony and evidence. The Court has said it is going to allow defendants to present all of their evidence about what they believe the appropriate Eighth Amendment limitations are or lack thereof on telepsychiatry at a trial. That trial will happen whether this Court reverses or not. Was that proposed by the district court prior to the appeal that the State filed here? I am not certain. I'm not certain, but it very clearly was before the opening briefs in this case. And the district court properly determined that there are significant disputes here, and she set a trial. That is the appropriate process for any evaluation of whether or not there is an appropriate use of telepsychiatry that is consistent with the Eighth Amendment. That's what defendants want out of this appeal, and that's what they're going to get, regardless of what happens here. It is also an order that is fundamentally too late. Every single aspect that the defendants complain about here in the 7-3 order already existed in the 10-10 order. There is nothing new in this order. All of the language ---- Alitoso, there is something new in the order, but I mean, the special master provision seemed to be new. So they're not new in this case because they're consistent with the order of reference. They are also not injunctive, primarily because the Court has never adopted any policy proposed by the special master.  And even to the extent there was, it's appropriate under the order of the 7-3 order. As to the substantive limitations, which are extremely narrow, as this Court has already recognized, the substantive limitations discussed in the 7-3 order already existed in the 10-10 order. There is no question that the 10-10 order's language was not permissive. The Court expressly adopted all of the special master's findings and recommendations It did it twice in the 10-10 order, ER-165, ER-171. It then orders that those recommendations that it just adopted, quote, shall form the basis of the addendum to the revised program guide. That is expressly injunctive language. Defendants were required to incorporate the provisions that they say are permissive. They were required to put them in their policy. There's no question it was injunctive, and they didn't appeal it. And moreover, they fully litigated what they want here. What they want this Court to do is not only reverse the 7-3 order, which merely articulates and restates the 10-10 order. They actually want you to reach back to an order they didn't even appeal. And they're asking you to look at the evidence in support of the 10-10 order like it's de novo review. If you even had any chance of looking back at that 10-10 order, anything you could possibly do would be clear error review only. And there is no question that what the district court did in the 10-10 order in setting these very, very limited provisions that apply to 10 to 15% of the class and only allow some use of on-site psychiatry, while allowing for a lot of telepsychiatry, that was entirely appropriate based on the record in this case. So your position is that this isn't a... Does this injunction, in however it's phrased, does it change the status quo as to what California was providing or how they were using telepsychiatry prior to the order? Are you talking about the 7-3 order? Well, let's go to both. I mean, in 2017, when that came down, did it change in any way how California was using telepsychiatry? It's not entirely clear. Well, it's probably a complicated question because... There was no policy in place. That was part of the problem. And it sounds like this is an evolving area. So even if they did change it, it may not have been in response to the injunction to the extent it was a mandatory injunction. That's correct. But the way it came out in the 2017 proceedings that were, again, fully litigated is the defendants put forth their newest staffing plan trying to remedy the 25-year-old constitutional violations of inadequate numbers of staff that, by the way, have been upheld by the Supreme Court as being unprecedented and extremely dangerous and below the Eighth Amendment standard. So they were putting forth a new plan in 2017 that, for the first time, sought to, as the Court said, dramatically expand their use of telepsychiatry. The Court had previously expressed concern that they were operating telepsychiatry without any policies and procedures and that it wasn't clear that they were doing it in an appropriate way. She said that in 2015. And so when they sought to dramatically expand it by almost tripling the number of telepsychiatrists that they wanted to use within a year, that was their plan. The Court said, hold on, I'm not sure that that is appropriate. You have no policies. And I want to set some guidelines based on what the special master had recommended that would be appropriate for your remediation. Essentially, you can't propose a staffing plan that would not bring you closer to remediating the constitutional violations. It has to actually remediate the problem. So doing something that's dangerous, that presents a substantial risk of serious harm under the farmer standard, that's not appropriate. And so the district court- Is your position that a broader use of telepsychiatry does violate the Eighth Amendment? Yes, that is our position. And that's what we're prepared to show at trial. So the state doesn't want any restrictions on inpatient care, on people that are in crisis, even though- So you actually disagree with the injunction that was issued because you think it was, it allows too much discretion to the state. No, actually. We think it's an appropriate injunction. There already is a provision saying that they can't use it except on an emergency basis or last resort for crisis feds and inpatient care. For telepsychiatry? Yes, that's correct. Oh, so it is actually pretty restrictive. It's more than just a supplement. It's more than just supplemental. There's actually other restrictions in there. There are, but the state isn't actually challenging those here. Were those in the 2017 order? Yes. The 7-3 order literally quotes the 2017 order when it's talking about the crisis fed provisions and restrictions. It literally quotes it. So there's just no question that those are not new terms. There's also no question that this will be a litigated trial where the district court will issue very detailed findings based on testimony about what she believes the appropriate remediation value of telepsychiatry is. Would you oppose jurisdiction or would you think that the court would have jurisdiction if you have the full trial and then the district court ... I mean, we're going to be in the same position at that point trying to debate about whether the order is different. Say there's an order issued in 2020 after trial, won't we be in the same position of debating about whether that order is different than the 2018 or the 17 order or your position is once you have a trial, even if you came out with the same provisions, it would be appealable at that point? There is no question that that would be an appealable order. She's already framed it. This is Defendant's Exhibit C, I believe, or number three, is her order saying what this trial will be. She's already said, I consider this a motion to modify under the RUFO standard. That's the standard I will apply at this trial. Under the literal terms of Section 1292A1, a denial of a motion to modify necessarily comes before this court. So there's no question. And, you know, the larger point is that injunctions are always changing. That's the nature of equitable relief. So defendants have the opportunity, and they've always had the opportunity, to actually move to modify under Rule 60. They also had the opportunity ... they claim that these provisions are vague. They never went to the court and said, what do you mean by this? And in fact, that's what the work group was doing. It was trying to figure out, can we all agree on how to operationalize what these broad concepts that the court has imposed that are limiting, what they mean in practice. And that's where the rubber hit the road, was essentially where we couldn't come to an agreement on what it meant to operationalize, in large part because defendants refused to concede that there was any limiting obligation from the October 10th order in the first place. They said it was entirely permissive. Has there ever been ... have the plaintiffs argued that the state is violating the injunction currently, the 2018, with use to tele-psychiatry? We did. We haven't moved, you know, for contempt or anything like that. Again, there's going to be a trial. And so we do think that they are not in compliance with the October 10th order. But again, we haven't actually moved the relief on that. But you're, at this point, willing to wait until the trial before you make any determination on that. And as to why there hasn't been a trial, I will just ... there's ... it's very clear from the record, plaintiffs R.J. and Exhibits B and C show the state is the one who asked for that trial to be taken off calendar. They've also told the court that she has no jurisdiction to have that trial. Well, but that seems right. I mean, with this pending appeal, I'm not sure that the district court does have jurisdiction. That may be entirely appropriate. But regardless, the delay here is not because of plaintiffs, and it's not because of the district court. It's because of us? No. No, Your Honor. It's because of this appeal. If defendants really wanted to understand and have a final appealable order that has all of the evidence that they want to present, but that they did not actually present, they have a trial, and that's their opportunity to do that. And that's where we should be next time we're in front of this court, on an actual appealable order that imposes injunctive terms. I see I have a significant amount of time remaining, but I'm not sure that there is that much more to say unless this court has additional questions for me. I don't think so. Thank you, Ms. Ells. Thank you. Mr. Lewis, you used most of your time, but I'll be happy to give you a minute or two for anything in response. Thank you, Your Honor. Very quick, Your Honor. I wanted to clarify exactly what defendants are appealing within the order from July of 2018. I apologize if I was unclear, because I think we're actually talking about the same things. We are appealing the section that regards EOP, and that is page ER5 at lines 17 and on. And then we are appealing the section regarding MHCB and how it is limited, except as a last resort or in emergency situations, in ER6 at lines 6 and on. And then we're appealing the provision of giving the special master the direction to formulate policy, and that's at ER6 at lines 19 and on. Very quickly, I'd like to point out that the district court decided in September of 2018 to hold the hearings after this appeal was filed on telepsychiatry. So that demonstrates that the district court was recognizing that disconnect that it mentioned in some of its orders. Why shouldn't we just let this go through to an appeal? I mean, it will flush out the record on the merits of the whole thing. Why aren't we better off with a more complete record than a very, very short order amending a much, much longer order that puts a lot of things in flux? Absolutely, Your Honor. Defendants took this appeal because there was no opportunity to have the hearing the court's now envisioned. So that's why this appeal is here. This is not taken— But now you've been given that. Exactly, Your Honor. But there's another provision within it about the special master being directed to finalize the policy. That takes away the state's authority to manage its own programs and takes away the defendant's authority. Right, but you're now getting a chance to challenge the whole premise of the special master's report. Why don't you take that opportunity? I mean, we sit and argue about sort of a second-level problem, that is, whether the special master gets to set the policy, or you can go and argue about what the policy ought to be. And the special master will then have to follow it, whatever it is, and you get to follow it, whatever it is. Yes, Your Honor. And that hearing has currently not been put back on calendar. Right, but it could be put—if we decide this—if we were to issue an order deciding this case today, presumably it could be put back on very promptly. It could be recalendered. And that's why defendants are asking to vacate the portions of this order, this July 2018 order, that concern telepsychiatry, and then remand to the district court for further proceedings. So, vacate the portions I asked about, EOP and MHCB, and the special master. You just want to reset the status quo going into the hearing. Yes, Your Honor, but there are provisions within this that do enjoin defendant's conduct, and we don't think are appropriate at this time. Well, but it sounds like there's—at this point, the plaintiffs may not disagree, or they may not agree that you're complying with it, but they don't seem to be seeking contempt at this point. And so, I mean, obviously, if they were seeking contempt, this might be slightly different. And that would be another—that seems like that would just be another sideshow. Why don't you just—why don't you just go to the main show and get this all on the record? Everything can be put—everything can be put down. You try it before the court, and then take—and then whoever loses can take the appeal. Both of you can take an appeal. Well, yes, Your Honor, but the fact is that it still has limitations on telepsychiatry without any indication that all of a sudden it's unconstitutional. Plaintiffs said that they think a broader use of telepsychiatry is unconstitutional. Well, how does it go from a little bit to a little bit more, becoming all of a sudden unconstitutional? It's simply untethered to these amendments. Well, it's the process of line drawing. I mean, you've been in this litigation for, what, 20 years, 25 years? Yes, Your Honor. Yeah. I mean, this is—you know, this is—this is not your first rodeo. It's not our first rodeo. Yes, Your Honor. And, Your Honor, thank you for your time. I do understand it's a vexing issue, but defendants really do believe that this is something that is important to them. And they want to have the ability to use this modality of care for its patients and to do the best thing for its patients. And this is how we can do it. Thank you for your time. Okay. Thank you very much. Thank you, Mr. Lewis. Thank you, Ms. Ells, for your competence in arguing in the case. The Court does appreciate it. With that, we have completed the oral argument calendar for the day and for the week, and the Court stands adjourned.
judges: Siler, Bybee, R. Nelson